UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No. 1:11-cv-23689-Altonaga/Simonton

KENNETH P. SHAW, and individual;
and SHAW ROSE NETS, LLC,
a Florida limited liability company,

    Plaintiffs,

v.

BROAD AND CASSEL, a Florida general
partnership; BROAD AND CASSEL, P.A.,
a Florida professional association; MARK F.
RAYMOND, an individual; MARK F.
RAYMOND, P.A., a Florida professional
association; RHETT TRABAND, an
individual; RHETT TRABAND, P.A.,
a Florida professional association; and
JUANCARLOS SANCHEZ, an individual,

    Defendants.
_____/

## **DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT WITH PREJUDICE AND INCORPORATED MEMORANDUM OF LAW**

In this legal malpractice case, the Plaintiffs (collectively "Shaw") are attempting to re-litigate a patent infringement case that they lost as a result of Plaintiff Kenneth P. Shaw's unequivocal and repeated sworn testimony. The Plaintiffs claim that the Defendants were negligent in failing to coach or "correct" Kenneth P. Shaw's testimony. The allegations of the amended complaint [DE 1-2] fail as a matter of law, because 1) there is no legal duty for the Defendants to coach or "correct" their clients' unequivocal and clear recollection and testimony; 2) the orders of this Court and of the Federal Circuit Court of Appeals in the underlying case demonstrate that Shaw's loss was not proximately caused by any act or omission of the

Defendants; and 3) Shaw is barred, under federal law of issue preclusion, from relitigating the factual issue on which the adverse result in the underlying case was based.

As a matter of law, the amended complaint [DE 1-2] must be dismissed, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, with prejudice.

## BACKGROUND

### In *Delaware Valley v. Shaw*, summary judgment was entered against Shaw on the basis of Kenneth P. Shaw's own sworn testimony

Shaw Rose Nets, LLC and Kenneth P. Shaw were defendants and counterclaimants in a case before this Court entitled *Delaware Valley Floral Group, Inc., et al. v. Shaw Rose Nets, LLC, et al.*, Case No. 1:07-cv-20199-Jordan (S.D. Fla.).[1] In *Delaware Valley*, flower importers and distributors sued Shaw for a declaratory judgment that a patent held by Shaw for increasing the size of rose heads during growth was invalid and unenforceable.[2] Shaw asserted counterclaims for patent infringement.[3] Defendants Broad and Cassel, and Broad and Cassel attorneys Mark F. Raymond, Rhett Traband and Juancarlos Sanchez[4] represented Shaw in the *Delaware Valley* case. Shaw lost that case on summary judgment,[5] and the Federal Circuit Court of Appeals affirmed. *See Delaware Valley Floral Group, Inc., et al. v. Shaw Rose Nets, LLC,*

---

[1] Because the record in the *Delaware Valley* case is referred to in the amended complaint, is central to the Plaintiffs' claim, and is undisputed as to authenticity, Defendants properly refer to and attach as exhibits portions of that record in support of this motion to dismiss without thereby converting this motion into a motion for summary judgment. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Gonzalez v. Watermark Realty, Inc.*, 2010 WL 1299740 at *2 (S.D. Fla. Mar. 30, 2010) (citing *Day*).

[2] Exh. A, Master Complaint for Declaratory Judgment.

[3] Exh. B, Shaw's Answer, Affirmative Defenses and Counterclaim.

[4] Defendant Broad and Cassel, P.A. is not a proper defendant in this case.

[5] Exh. C, Order Granting Plaintiffs' Motion for Summary Judgment.

2

597 F.3d 1374 (Fed. Cir. 2011).

The events leading to summary judgment against Shaw in the *Delaware Valley* case are as follows:

1. While a number of grounds and defenses were raised by the plaintiffs in *Delaware Valley* to invalidate Shaw's patent, the ground that proved dispositive was the "on sale" provision of 35 U.S.C. § 102(b), which provides, "A person shall be entitled to a patent unless … the invention was … on sale in this country, more than one year prior to the date of the application for patent."[6]

2. The plaintiffs in *Delaware Valley* alleged, in support of their claim to invalidate Shaw's patent, that flowers grown using Shaw's invention were on sale in the U.S. more than one year prior to Shaw's January 16, 1996 patent application.[7]

3. In his answer, Shaw denied the allegations relating to the on-sale bar, and counterclaimed for patent infringement.[8]

4. In interrogatory answers dated December 2007, Shaw stated that the first offering for sale of products using the patented method was "in or around August/September 1995." *Delaware Valley*, 597 F.3d at 1377.

5. Kenneth P. Shaw, the principal of Shaw Rose Nets, LLC, was deposed by the plaintiffs on March 13, 2008, and at that deposition "unequivocally and repeatedly dismissed his earlier interrogatory answers as a mistake." *Id*. at 1382.

---

[6] The attorneys for Shaw in this case, the law firm of Feldman Gale, P.A., represented the plaintiffs in *Delaware Valley*. In that case, Feldman Gale took the position that several bases, in addition to the on-sale bar, existed to invalidate Shaw's patent, see Exh. A, Master Complaint for Declaratory Judgment ¶¶ 21-26.

[7] Exh. A, Master Complaint for Declaratory Judgment ¶¶ 26, 27, 40, 41, 61.

[8] Exh B, Shaw's Answer, Affirmative Defenses and Counterclaim ¶¶ 26, 27, 40, 41, 61 & pp. 7-14.

Shaw repeatedly testified that the information stated in his interrogatory answer was "a mistype," "a typo," and "my error."[9] *Id*. at 1377. Shaw provided detailed information as to how he now knew that the interrogatory answer was mistaken, and described how he had checked his passport and consulted his colleagues to confirm the correct dates.[10] *Id*. at 1377, 1379. At that deposition, Shaw emphatically pinpointed the precise week in May *1994* when he conceived of the invention, and testified that by September *1994* he began commercial shipments and sales in the U.S.[11] At the deposition, "Mr. Shaw adamantly maintained that 1994 rather than 1995 was the correct date." *Id*. at 1379. In total, "Mr. Shaw testified eighteen times that he invented the process described and claimed in the '305 patent in *1994*." *Id*. at 1377, 1382 (emphasis added).

6. Following his deposition, Shaw did not tell his attorneys that his deposition testimony was allegedly mistaken until after the *Delaware Valley* plaintiffs served a Rule 11 motion[12] on Shaw on May 6, 2008,[13] almost two months after the deposition.

7. After Shaw told them that he had been mistaken in his deposition testimony, the Defendants prepared an errata sheet at Shaw's request stating his

---

[9] Exh. C, Order Granting Plaintiffs' Motion for Summary Judgment, p. 4.

[10] Exh. C, Order Granting Plaintiffs' Motion for Summary Judgment, pp. 2, 4.

[11] Exh. C, Order Granting Plaintiffs' Motion for Summary Judgment, pp. 2-3.

[12] The Rule 11 motion was denied. Exh. D, Order Denying Plaintiffs' Motion for Sanctions Under Rule 11. In the *Delaware Valley* case, plaintiffs' counsel, who are now representing Shaw in this action, argued that Shaw was legally precluded from changing or contradicting his deposition testimony.

[13] Exh. C, Order Granting Plaintiffs' Motion for Summary Judgment, p. 5.

4

"incorrect recollection" of the dates of invention and sale at his deposition.[14] The errata sheet was prepared by the Defendants after the 30-day time period provided by FRCP 30(e), but could not have been prepared earlier because Shaw had not informed them that his deposition testimony was "mistaken" until after the 30-day period had already passed.

8. The *Delaware Valley* plaintiffs moved for summary judgment on the basis of the on-sale bar. In opposition to the motion, Shaw filed, among other things, a declaration contradicting his own deposition testimony and setting forth his "corrected" recollection of the dates of invention and sale.[15] *Delaware Valley,* 597 F.3d at 1378.

9. The Court granted summary judgment for the *Delaware Valley* plaintiffs, invalidating Shaw's patent on the basis of the on-sale bar of 35 U.S.C. § 102(b), stating that the basis of its ruling was Shaw's 'unequivocal" deposition testimony.[16] The Court held that Shaw's errata sheet and declaration in opposition to summary judgment were not sufficient to create an issue of fact by contradicting his own repeated and emphatic deposition testimony.[17]

10. Shaw moved for reconsideration of the summary judgment order, and in support submitted another declaration of himself stating that, following summary judgment, he had contacted present and former colleagues whose recollections of the invention and "on sale" date differed from his own. One of

---

[14] Exh. C, Order Granting Plaintiffs' Motion for Summary Judgment, p. 5.

[15] Exh. C, Order Granting Plaintiffs' Motion for Summary Judgment, pp. 9-10.

[16] Exh. C, Order Granting Plaintiffs' Motion for Summary Judgment, pp. 2, 8, 11, 14.

[17] Exh. C. Order Granting Plaintiffs' Motion for Summary Judgment, pp. 9-10.

5

these individuals, his assistant David Sperber, was the same person that Shaw cited in his deposition as having corroborated his recollection of the 1994 date. *Delaware Valley*, at 1377, 1383-84. The other individual, Pedro Salzedo, had also been referred to in Shaw's deposition as having been involved in the 1994 invention and sale. *Id*. at 1377, 1383-84. While the Court held that the declarations of Sperber and Salzedo were not newly discovered evidence, it also held that those declarations would not in any event have created an issue of fact to preclude summary judgment, when they did no more than contradict Shaw's own sworn testimony.[18]

11. Shaw appealed to the Federal Circuit Court of Appeals, which affirmed the summary judgment and the denial of reconsideration. *Id.* at 1383-84.

12. In the orders of this Court granting summary judgment and denying reconsideration, and in the Federal Circuit opinion affirming those rulings, the courts rejected Shaw's attempt to "correct" or withdraw his testimony at his deposition either by errata sheet, by conflicting declaration of Shaw himself, or by declarations of other witnesses contradicting Shaw's own testimony. Shaw's deposition testimony was held to be "unequivocal," "unambiguous," and "adamant" with respect to the 1994 invention and "on sale" dates.[19] *Id*. at 1378, 1379, 1381, 1382. The courts rejected Shaw's attempt to retract his repeated deposition testimony about the 1994 date as a "mistake," when in that deposition he had emphatically and repeatedly stated that the 1995 date contained in his

---

[18] Exh. E, Order Denying Defendants' Motion for Reconsideration, pp. 4-5.

[19] Exh. C, Order Granting Plaintiffs' Motion for Summary Judgment, pp. 2, 7, 8, 11, 14.

6

interrogatory answer was a mistake and that the 1994 date was correct.[20]  *Id.* at 1379, 1381-82.  The court of appeals cited the "well settled" principle that "a court may 'disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony'." *Id.* at 1382 (citation omitted).   The court of appeals held that the Court properly refused to do so in Shaw's case, when Shaw's deposition testimony was "unequivocal" and when Shaw by his own account was a "seasoned deponent" who had been deposed 40 to 50 times.  *Id.* at 1379-80, 1383.

Shaw's patent was invalidated and his infringement claims dismissed as a result of his own repeated, unequivocal and adamant sworn testimony that he invented and sold products using his patented system in 1994, more than one year before he applied for a U.S. patent.  The orders of this Court and of the court of appeals make it clear that the rulings against Shaw in the underlying case were not in any way caused by any action or inaction by the Defendants, and the amended complaint for legal malpractice must therefore be dismissed with prejudice.

## LEGAL ARGUMENT

Under Florida law, the plaintiff in a legal malpractice suit must prove "three elements: (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) [that] the attorney's negligence resulted in and was the proximate cause of loss to the client." *Sure Snap Corp. v. Baena*, 705 So.2d 46, 48 (Fla. 3d DCA 1997), *review denied*, 719 So.2d 288 (Fla. 1998); *Bolves v. Hullinger*, 629 So.2d 198, 200 (Fla. 5th DCA 1993); *Weiner v. Moreno*, 271 So.2d 217, 219 (Fla. 3d DCA 1972).  Based on the allegations of Shaw's amended complaint,

---

[20]   Exh. C, Order Granting Plaintiffs' Motion for Summary Judgment, pp. 8, 11-12.

7

and the orders of this Court and the court of appeals in the underlying case, Shaw does not and cannot establish the second and third elements of a claim of legal malpractice. Moreover, federal law of issue preclusion bars Shaw from relitigating the issue of whether his deposition testimony in *Delaware Valley* was a mistake and from attempting to "correct" that testimony in this case.

### The amended complaint fails to meet the "facial plausibility" pleading standard

The amended complaint fails to satisfy the standard for stating a claim for relief. That standard has been described by the Supreme Court as follows:

> . . . . [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . .
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)); *Mamani v. Berzain*, 654 F.3d 1148, 1152-53 (11th Cir. 2011); *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1332-33 (11th Cir. 2010).

As set forth in more detail below, Shaw's amended complaint contains no more than a bare assertion that Shaw's loss in the underlying *Delaware Valley* litigation was the result of negligence on the part of the Defendants. That conclusory allegation is completely negated by the undisputed contents of the record in that litigation, including the orders of this Court and of the Federal Circuit Court of Appeals, Shaw's amended complaint must therefore be dismissed with prejudice.

### The Defendants had no legal duty to coach or "correct" Shaw's sworn testimony

While couched in boilerplate terms of a negligence claim, Shaw's actual grievance

appears to be that the Defendants failed to timely coach him to testify, perhaps falsely, in a manner so as to avoid the on-sale bar. A lawyer representing a client has no duty to create or manufacture evidence, or to contradict the client's emphatic recollection and unequivocal testimony. To the contrary, as set forth below, an attorney is prohibited from doing so.

In a legal malpractice case, as in every negligence case, the threshold question of whether or not a legal duty exists is one of law for the court. *Hunzinger Constr. Corp. v. Quarles & Brady*, 735 So.2d 589, 593 (Fla. 4th DCA 1999), *review denied*, 766 So.2d 222 (Fla. 2000). In this case, it is clear that the Defendants owed no duty to Shaw to either coach his testimony in advance, to override Shaw's unequivocal recollection, or to "correct" his unequivocal deposition testimony after the fact, and therefore there is no basis for this malpractice case.

The Defendants had no duty to undertake to disprove or contradict Shaw's sworn and definite deposition testimony until Shaw advised them that he had allegedly made a "mistake" at his deposition. Shaw's deposition testimony as to the events surrounding his invention and sale of the rose-growing method was clear and based on Shaw's detailed personal recollection of events in which he was intimately involved. There is no allegation that Shaw informed the Defendants that his deposition testimony was "mistaken" or instructed the Defendants to "correct" that testimony until after he had received a Rule 11 motion. Indeed, inasmuch as Shaw swore repeatedly that his earlier interrogatory answers were themselves incorrect, there was patently no basis for any duty on the Defendants' part to contradict their own client or override his unequivocal assertion that his recollection was correct.

The Defendants did not have an obligation to "correct" Shaw's testimony until he advised them that he was "mistaken." A lawyer's duty to his client does not extend to undertaking tasks and investigations that his client does not request and that are thus beyond the scope of the

9

lawyer's duty to the client.  *See Boyd v. Brett-Major*, 449 So.2d 952, 954 (Fla. 3d DCA 1984); *also Lane v. Cold*, 882 So.2d 436, 437-38 (Fla. 1st DCA 2004); *Kates v. Robinson*, 786 So.2d 61, 64-65 (Fla. 4th DCA 2001); *McCarty v. Browning*, 797 So.2d 30, 31 (Fla. 3d DCA 2001); *Maillard v. Dowdell*, 528 So.2d 512, 515 (Fla. 3d DCA), *review denied*, 539 So.2d 475 (Fla. 1988).  Therefore, the Defendants had no duty to seek to "correct" Shaw's deposition testimony until Shaw belatedly informed them that his unequivocal and certain testimony was allegedly "mistaken."

The source of evidence in a case is and must be the client.  This fundamental concept is borne out by the Florida Rules of Professional Conduct, which prohibit a lawyer from coaching or assisting a client or witness to present other than truthful evidence, or from obstructing the other side's access to that truthful evidence.  Fla. R. Prof. Cond. 4-3.4(a)-(b).  The Local Rules of this Court preclude an attorney from coaching or suggesting an answer to a witness during a deposition, from interrupting an examination of a witness for any purpose other than to assert a privilege, and from prompting a witness at deposition by "suggestive" objections.  S.D. Fla. Rules 30.1(a)(1)-(2), S.D. Fla. Discov. Prac. Handbook II.B(3).  Florida Statutes section 57.105, which provides for sanctions for raising legally or factually unsupported claims or defenses, provides that a lawyer is entitled to rely "on the representations of his or her client as to the existence of those material facts." Fla. Stat. § 57.105(3)(b).

The case law is replete with decisions holding that a lawyer is not liable to third parties or opposing parties for statements made or actions taken in reliance on information provided to the lawyer by the client.  *See Baron v. Fieldstone*, 581 So.2d 649, 650 (Fla. 3d DCA 1991) (when "counsel acted in good faith based on representations from his client" the lawyer was not liable when evidence did not support client's breach of contract claim); *Endacott v. International*

*Hospitality, Inc.*, 910 So.2d 915, 922 (Fla. 3d DCA 2005) ("as attorneys, the defendants are entitled to rely on their client's representations of fact").  A lawyer has no duty to investigate the truthfulness or accuracy of information provided by his client unless the client specifically requests that the lawyer do so.  *See Leak-Gilbert v. Fahle*, 55 P.3d 1054, 1058 (Okla. 2002) ("to hold that an attorney has a duty to confirm heir information by conducting an investigation into a client's heirs independent of, or in addition to, the information provided by the client, even when not requested to do so, would expand the obligation of the lawyer beyond reasonable limits"); *Meiksin v. Howard Hanna Co.*, 590 A.2d 1303, 1306 (Pa. Super. Ct.), *appeal denied*, 600 A.2d 196 (Pa. 1991) (lawyer not liable for abuse of process if he relied upon falsified facts provided by his client)); *Montgomery County v. Microvote Corp.*, 2000 WL 134708 at *11-12 (E.D. Pa. 2000) (citing *Meiksin*).

If a lawyer is not liable to third parties for relying on his client's representations, a lawyer certainly cannot be liable to the client upon whose representations the lawyer relied.  Moreover, the instant case does not involve the lawyer's conveying or interpreting his client's evidence; rather, this case involves Shaw's own unequivocal testimony under oath and on the record.  The rulings of the district court and the circuit court in *Delaware Valley* were based on Shaw's own sworn, definite and repeated testimony, not on any filing by the Defendants setting forth Shaw's positions or characterizing his evidence.  Shaw does not allege that the rulings of those courts were legally incorrect based on the evidence he provided.  There is no legal duty for a lawyer to prevent an adverse ruling when that adverse ruling is based solely on the client's own testimony.

Shaw contends, despite the final judgment to the contrary, that his sworn deposition testimony in *Delaware Valley* was "mistaken" [DE 1-2 ¶¶ 26, 29, 31, 33, 34, 36, 37, 39, 40], and that the Defendants had an obligation to "correct" his "mistake."  [DE 1-2 ¶¶ 26, 31, 32, 34, 39,

11

40, 42, 44, 53]. These assertions simply do not constitute legal malpractice. A client's claim of a "mistake" on his own part does not equate to malpractice on his attorney's part. The complaint does not set forth any source of a duty on the part of the Defendants to "correct" Shaw's sworn deposition testimony in which he himself "corrected" his earlier interrogatory answer.

Shaw testified eighteen times at his deposition that he first invented and sold products using his patented method in 1994. He insisted repeatedly and adamantly that his recollection of the specific dates and events in 1994 *was not* a mistake. Tellingly, he specifically testified that it *was* a mistake when he signed interrogatory answers stating the 1995 date of invention and sale.

This was not a case where Shaw equivocated or was uncertain or expressed at any point any need for further investigation or review of documents to refresh, confirm or corroborate his recollection. He was absolutely and categorically certain in his deposition testimony. Shaw by his own account was intimately familiar with the details and history of his invention, and had been deposed 40 to 50 times before. Having testified under oath that he was correct in stating 1994 as the year of invention and sale, and that the Defendants were wrong in preparing the interrogatory answers stating 1995, Shaw cannot now totally reverse himself and base his claim on the exact opposite position. Patently, the Defendants had no duty to set out to prove their own client wrong.

Shaw's allegation that the Defendants had an obligation to "correct" his testimony is likewise not based on any legal duty. A lawyer has no obligation to contradict his client's sworn and definitive statement of events. That is particularly true when, as in this case, Shaw's deposition testimony was clear and unequivocal that the 1995 date set forth in the interrogatory answers prepared by the Defendants was wrong. Shaw was given the opportunity to, and did,

12

explain why 1994 was the right date and 1995 was wrong. Where their client had specifically and under oath corrected his own prior interrogatory answers, there could be no basis for the Defendants to doubt their client's information or seek to discredit it. The only reason Shaw gives for the Defendants to "correct" his testimony was that Shaw's testimony was harmful to his patent case. A lawyer does not have an obligation to manufacture, suppress, or manipulate evidence to comport with a legal theory to benefit his client.

Notably, Shaw does not allege that he ever advised the Defendants that he had made a "mistake" at his deposition until after they received a Rule 11 motion from the *Delaware Valley* plaintiffs preliminary to the dispositive motion for summary judgment in that case. Only then did Shaw tell the Defendants that he had been "mistaken" at his deposition, and at that point the Defendants filed declarations, an errata sheet, and legal memoranda with the Court advising the Court of their clients' new position and assertions. The Defendants had no duty to attempt or even conceive of any such "correction" before their client informed them that he had made a "mistake." That the Court did not credit Shaw's retraction of his "mistaken" deposition testimony was not the fault of the Defendants but the result of Shaw's testimony itself.

The Defendants had no duty to correct, doubt or repudiate Shaw's sworn testimony based on his detailed personal recollection of the dates of Shaw's invention and sale of the rose-growing system that was the subject of the *Delaware Valley* litigation. In the absence of any such legal duty, the amended complaint does not, as a matter of law, state a claim for legal malpractice against the Defendants, and the amended complaint should be dismissed with prejudice.

**Shaw's loss in the underlying litigation was not proximately caused by the Defendants**

In a case of litigational malpractice, the causation element of the claim requires the

plaintiff to must prove that, but for the alleged negligence of the defendant attorney, the plaintiff would have prevailed in the underlying case.  *Sure Snap*, 705 So.2d. at 49; *Bolves*, 629 So.2d at 200-01.  In a legal malpractice claim, "[p]roximate cause may be considered a question of law where reasonable minds cannot differ." *Dadic v. Schneide*r, 722 So. 2d 921, 923 (Fla. 4th DCA 1998); *also Kelly v. Nelson, Mullins, Riley & Scarborough, LLP*, 2004 WL 4054841 at *6 (M.D. Fla. Nov. 17, 2004) (citing *Dadic*); *Chipman v. Chonin*, 597 So.2d 363, 364 (Fla. 3d DCA 1992); *see Hatcher v. Roberts*, 478 So.2d 1083, 1087 (Fla. 1st DCA 1985), *review denied*, 488 So.2d 68 (Fla. 1986) (summary judgment for lawyer affirmed where allegedly omitted affirmative defense would not have succeeded as a matter of law).

Shaw contends that had the Defendants timely "corrected" his "mistaken" deposition testimony via an errata sheet pursuant to Rule 30(e), summary judgment would not have been entered against him.  The failure to file an errata sheet within 30 days of the deposition being transcribed was clearly not caused by any act or omission of the Defendants, because it is unquestioned that Shaw did not inform the Defendants of his "mistake" within that time period.

Furthermore, Shaw's contention that a timely filed errata sheet would have changed the outcome of the underlying litigation is belied by the Court's order granting summary judgment in *Delaware Valley*, in which the Court stated:

> My conclusion to exclude the errata sheet is also supported by the circumstances of this case. First, Mr. Shaw was unequivocal in his deposition testimony regarding the dates of conception and sales in the United States: he was asked several times throughout the deposition and he reaffirmed these dates; he offered his passport for verification and referred to specific stamps and pages from the passport; he was asked about and explained the discrepancy between his deposition testimony and his interrogatory answers; and he served his errata sheet about two and a half weeks after the plaintiffs served him with their motion for sanctions pursuant to Rule II, notifying him that his testimony was fatal to his claim. Second, Mr. Shaw is a seasoned deponent; he stated in his

> deposition that he has been deposed 40 to 50 times. See Shaw Deposition at 5. *I see no reason why Mr. Shaw should be allowed to change his deposition testimony with an untimely errata sheet, even if I had discretion to excuse compliance with the 30-day period.*[21]

(Emphasis added). Thus, the Court ruled that, even aside from the late filing of the errata sheet, Shaw's proffered changes to his deposition testimony, materially altering his unequivocal testimony, would not be considered in order to create an issue of fact to avoid summary judgment. The Federal Circuit affirmed the Court's ruling in this regard as a proper exercise of its discretion. *Delaware Valley*, 597 F.3d at 1380-81.

Moreover, the same points that Shaw proffered in his errata sheet were made in his declaration in opposition to summary judgment, and for the same reasons were rejected as an attempt to contradict his own sworn testimony in order to avoid summary judgment. The circuit court ruled that Shaw's attempted repudiation of his own clear testimony was undermined by his own explanation for the change:

> [T]he logic, persuasiveness, and viability of Shaw's effort to show his deposition testimony was in error is severely undermined by his purported explanation for his inconsistency. Indeed, *the documentation Shaw offers for support that there are genuine issues in dispute is the same he offered for why his deposition was correct and his interrogatory answers were mistaken.*
>
> . . . . *Mr. Shaw unequivocally and repeatedly dismissed his earlier interrogatory answers as a mistake. . . .* Further, Mr. Shaw testified eighteen times that he invented the process described and claimed in the '305 patent in 1994 during the deposition. In this case, we cannot conclude that Shaw does anything more than offer a contradictory declaration to create a genuine issue of material fact.

*Id*. at 1381-82 (emphasis added). Thus, Shaw's declaration in opposition to summary judgment was rejected for the same reason that his errata sheet was rejected. That is, because it was clear

---

[21] Exh. C, Order Granting Plaintiffs' Motion for Summary Judgment, pp. 11-12.

to the district court and the court of appeals on *de novo* review that Shaw's attempted "correction" of his "mistaken" testimony was simply an impermissible attempt to avoid summary judgment.

It is clear from this Court's ruling and the circuit court opinion that the summary judgment against Shaw was not caused by the late filing of the errata sheet "correcting" Shaw's testimony, but by Shaw's testimony itself, the nature of which required the courts to disregard any attempt by Shaw to "correct" himself, whether by errata sheet or declaration, in order to avoid summary judgment.

The ruling of this Court regarding the declarations of Sperber and Salzedo also reveal that these declarations would have had no impact on the outcome of the underlying case, regardless of when they were filed. As this Court held in denying Shaw's motion for reconsideration, it would not consider evidence from these witnesses to flatly contradict Shaw's own testimony, regardless of the declarations had been filed in opposition to the motion for summary judgment. The Court ruled:

> Rule 56 law, and issues regarding *whether an individual can contradict his own testimony by offering another witness' testimony,* are matters of procedure not unique to patent law.
>
> I must therefore follow Eleventh Circuit precedent, which does not allow Mr. Shaw to contradict his prior testimony by offering testimony from other individuals. *See Evans V. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) ("As we said in *Draper v. Reynolds*, 369 F.3d 1270, 1272 (11th Cir. 2004), and *Rowe v. Ft. Lauderdale*, 279 F.3d 1271, 1279 n. 9 (11th Cir. 2002), we accept the nonmovant's version of the events when reviewing a decision on summary judgment. *When the nonmovant has testified to events, we do not (as urged by Plaintiffs' counsel) pick and choose bits from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) and then string together those portions of the record to form the story that we deem most helpful to the nonmovant.* Instead, when conflicts arise between the facts evidenced by the parties, we credit

> the nonmoving party's version. *Our duty to read the record in the nonmovant's favor stops short of not crediting the nonmovant's testimony in whole or part: the courts owe a nonmovant no duty to disbelieve his sworn testimony which he chooses to submit for use in the case to be decided.*")

[Emphasis added].[22]  The Court's order makes clear that the adverse ruling on summary judgment against Shaw was due, not to the failure of the Defendants to proffer the declarations of Salzedo and Sperber earlier in the case, but rather because those declarations were ineffectual to contradict Shaw's own sworn version of the events in which he was the primary actor and intimately involved, i.e., the invention and sale of his rose-growing method.  Salzedo and Sperber could no more contradict Shaw's own prior sworn testimony than could Shaw himself.

It is apparent from the orders of this Court and the circuit court in the underlying case that the adverse outcome of that case was due to Shaw's own testimony, not to any action or inaction of the Defendants.  Shaw's amended complaint does not, as a matter of law, satisfy the proximate cause element of a claim for legal malpractice, and therefore must be dismissed with prejudice.

### Shaw's attempt in this case to "correct" his sworn testimony in the *Delaware Valley* case is barred by federal law of issue preclusion

In order to prevail in the present case, Shaw would have to establish that his deposition testimony in the *Delaware Valley* case was a "mistake" and be permitted to "correct" that testimony.  The issue of whether or not Shaw's testimony was a "mistake" that he could "correct" was the precise issue litigated and ruled on in the *Delaware Valley* case.  Shaw is therefore precluded from relitigating that issue in this case.

Although a legal malpractice claim arises under state law, because the judgment in *Delaware Valley* was rendered by a federal court, federal rather than state law applies to

---

[22]  Exh. E, Order Denying Defendants' Motion for Reconsideration, pp. 4-5.

determine the preclusive effect of that judgment. *Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1502-03 (11th Cir. 1984), *cert. denied*, 469 U.S. 1191 (1985); *Natural Answers, Inc. v. Carlton Fields, P.A.*, 20 So.3d 884, 887 (Fla. 3d DCA 2009); *Amador v. Florida Board of Regents*, 830 So.2d 120, 122 (Fla. 3d DCA 2002), *review denied*, 845 So.2d 887 (Fla. 2003).

The doctrine of issue preclusion prevents the relitigation of issues that were actually litigated and decided in a prior suit. *See Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990). The prerequisites to the application of federal issue preclusion are:

> (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541, 1549 (11th Cir.1986). The fact that the Defendant law firm and lawyers were not parties to the underlying litigation does not bar the application of issue preclusion in this case. Federal issue preclusion does not require mutuality of parties, and may be asserted by a non-party to the original action. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Found.*, 402 U.S. 313, 328 (1971). Under federal issue preclusion, a party may not relitigate an identical issue by merely "switching adversaries." *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329 (1979). The doctrine precludes relitigation of issues that were actually litigated in the initial suit, whether or not the second suit is based on the same cause of action. *Precision Air Parts*, 736 F.2d at 1501.

The issue of whether or not Shaw's deposition testimony was a "mistake" that he could "correct" was fully and actually litigated in the *Delaware Valley* case. The determination of that issue was a critical and necessary part of the ruling adverse to Shaw in the underlying litigation.

Therefore Shaw cannot relitigate that identical issue in this case in hope of obtaining a different result. The judgment of this Court in *Delaware Valley* that Shaw could not "correct" his sworn deposition testimony is binding on that issue in the present case, and requires the Court to dismiss Shaw's legal malpractice case with prejudice.

## CONCLUSION

On the grounds set forth above, Defendants request that the Court dismiss the amended complaint with prejudice.

Respectfully submitted,

*/s/ Isaac J. Mitrani*
Isaac J. Mitrani
Fla. Bar No. 348538
imitrani@mitrani.com
Pamela A. Chamberlin
Fla. Bar No. 444006
pchamberlin@mitrani.com
MITRANI, RYNOR, ADAMSKY
    & TOLAND, P.A.
301 Arthur Godfrey Road
Penthouse
Miami Beach, Florida  33140
Telephone: (305) 358-0050
Fax:  (305) 358-0550
*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 7, 2011, I electronically filed the foregoing document with the Clerk of Court via CM/ECF and that the foregoing document is being served this day on all counsel of record identified below in the manner specified:

Jeffrey D. Feldman, Esq.
jfeldman@feldmangale.com
Christopher P. Demetriades, Esq.
cdemetriades@feldmangale.com
FELDMAN GALE, P.A.
One Biscayne Tower, 30th Floor
Miami, Florida  33131
Telephone:  (305) 358-5001
Fax:  (305) 358-3309
*Attorneys for Plaintiffs*
*via CM/ECF*

                                                                                    */s/ Isaac J. Mitrani*