UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 1:11-cv-23689-Altonaga/Simonton

KENNETH P. SHAW, an Individual;
and SHAW ROSE NETS, LLC., a Florida
Limited Liability Company,

       Plaintiffs,

v.

BROAD AND CASSEL, a Florida General
Partnership; BROAD AND CASSEL, P.A.,
a Florida Professional Association; MARK F.
RAYMOND, an Individual; MARK F. RAYMOND, P.A.,
a Florida Professional Association; RHETT TRABAND,
an Individual; RHETT TRABAND, P.A., a Florida
Professional Association; JUANCARLOS SANCHEZ,
an Individual,

       Defendants.

_____/

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AMENDED COMPLAINT WITH PREJUDICE**

Plaintiffs, Kenneth P. Shaw and Shaw Rose Nets, LLC ("Shaw"), by and through

undersigned counsel, hereby respond to Defendants, Broad and Cassel, Mark F. Raymond, Mark

F. Raymond, P.A., Rhett Traband, Rhett Traband, P.A. and Juancarlos Sanchez' (collectively the

"Defendants") Motion to Dismiss Amended Complaint with Prejudice (the "Motion") and state:

## I.    <u>INTRODUCTION</u>

In this legal malpractice action, Shaw is seeking to hold  Defendants accountable for

their breach of professional responsibilities that led directly to his loss of  U.S. Patent No.

5,765,305  (the "'305 Patent") which claimed  a method to substantially enhance the growth and

size of rose heads by using nylon mesh nets.   In the underlying patent infringement case which

the Defendants litigated on Shaw's behalf in this court before Judge Jordan, Judge Jordan invalidated the '305 Patent based on a §102(b) "on-sale" bar finding that Mr. Shaw's first commercial sale was more than a year before the filing date of his patent application. Judge Jordan's finding arose exclusively from Mr. Shaw's deposition testimony. Contrary to their current position, the Defendants, when representing Mr. Shaw argued to Judge Jordan, and later to the Federal Circuit, that Mr. Shaw's deposition testimony was erroneous. Despite Defendant's repeated pleas that Mr. Shaw made a mistake and Defendants' submission of post deposition corrective evidence, Judge Jordan, by default, invalidated the '305 patent not because he deemed Shaw's deposition testimony accurate but because the evidence which revealed it to be inaccurate was given to him too late. Thus, the '305 patent, a patent which Defendants apprised Shaw merited patent infringement damages in excess of 25 million dollars, is forever lost based on a legal conclusion made on an erroneous factual record which Judge Jordan had to accept because Defendants did not timely submit corrective evidence which was always within their reach.

Thus, this case is not about Defendants' failure to coach their client but rather about their failure to properly investigate Shaw's case and prepare him for deposition; their failure to timely appreciate a dispositive legal issue; their failure to apprise Mr. Shaw of that issue until it was too late and their failure to timely submit corrective evidence so that Judge Jordan was not defaulted into making a summary judgment ruling on an erroneous record. All of these errors proximately caused the loss of the '305 patent. Indisputably, had Defendants left Shaw's deposition appreciating, as they should have, that their client had just put their case on "life support," they would have then done what they did immediately following receipt of their adversaries' Rule 11 motion: they would have informed Shaw of the §102(b) issue; they would have investigated and

2

determined that a mistake occurred; they would have helped Shaw prepare an *errata* sheet and they would have collected third party affidavits to prove the genuineness of Shaw's corrected testimony. Ignoring the reality of what they did and did not do, the Defendants cast themselves as victims of a client who is suing them for not helping him lie. This is not the case. Mr. Shaw did not have to lie to beat summary judgment.  He merely needed the Defendants to do timely what they did untimely and had they, Mr. Shaw would not have suffered the loss of his patent.[1]

At the end of the day, each of the Defendants three arguments fails. Shaw is not suing because Defendants breached a non-existent duty to "coach" him. Rather, he is suing because the Defendants did not investigate his case and prep him for deposition as they should have; they did not know the law applicable to his case; they did not appreciate the existence of a dispositive legal issue; they did not, whether because of ignorance or oversight, inform him of that critical legal issue and in so doing kept him from *timely* correcting his testimony and submitting relevant and admissible third party corrective evidence.

Secondly, had a timely *errata* sheet been submitted, the Sperber and Salzedo affidavits would have been corroborative of Shaw's *errata* sheet rather than falling victim to it. That Sperber and Salzedo's affidavits could not be used to contradict Shaw's deposition testimony presupposes that Shaw could not have corrected his deposition testimony through a timely *errata* sheet which, of course, Shaw had the right to do. Had Shaw's *errata* sheet been timely submitted, the law Defendants now cite which precludes a party from contradicting his own

---

[1]  Indeed, throughout the record, these Defendants maintained more than twenty-five separate instances that Shaw was simply "mistaken" when he testified incorrectly as to the date on which he began selling roses grown with his patented method.  In any event, while the Defendants may suggest here that Shaw testimony in deposition was in fact correct, on a motion to dismiss, this Court must accept the well-pled allegations of the pleading as true.  Here, Shaw has alleged that  the testimony he gave at deposition was mistaken and this court must accept that for purposes of this Motion.  See Amended Complaint, ¶ ¶ 26, 29.

testimony with third party evidence would have been inapplicable because the *errata* sheet and witness affidavits were entirely consistent with each another.

And as for Defendants' third argument, issue preclusion, the Defendants thoroughly miss the point. Shaw is not seeking to re-litigate the validity of his patent. The patent is gone. He is attempting to show that had defendants been knowledgeable and diligent as they were required to be, he would still have his patent as the erroneous factual record that defaulted Judge Jordan into invalidating Shaw's patent would not have existed. The Defendants cannot seriously contend that these issues were litigated in the underlying case. Nor can they contend that Judge Jordan ever resolved the issue of whether Shaw's deposition testimony was mistaken. Judge Jordan merely determined that Shaw's *errata* sheet was untimely. More significantly, Defendants cannot seriously argue that they can shield themselves from suit by reason of a legal finding compelled by their own negligence.  That would be bootstrapping of the highest order.

Reduced to its basics, the Defendants' argument is fundamentally this – even though they are lawyers, they had no duty to understand the law concerning the "on-sale" bar, no duty to understand the application of the bar to the facts of the case and no duty to advise their client of any issue related to the bar until after being served with a Rule 11 motion at a time when it was too late for Shaw to discover and correct his deposition testimony.  Or, even more egregiously, assuming they understood the legal issue, they had the right to simply stand mute and fail to apprise the client that based on his deposition testimony, which was inconsistent with his previous sworn interrogatory responses, his patent was now worthless.  The Defendants' position is both preposterous and incorrect and they should be required to answer to Mr. Shaw for their blatant shortfall and dereliction of duty.

## II.     <u>STANDARD ON A MOTION TO DISMISS</u>

It is well settled that "[a]t the motion to dismiss stage . . .we must accept all factual allegations as true and construe them in the light most favorable to the plaintiff," *Baloco ex rel. Tapia v. Drummond Co., Inc.,* 640 F.3d 1338, 1345 (11th Cir. 2011); *Beck v. Deloitte & Touche,* 144 F.3d 732, 735 (11th Cir.1998). A motion to dismiss does not test the merits of a case, but only requires that "the plaintiff's factual allegations, when assumed to be true, 'must be enough to raise a right to relief above the speculative level.' " *Mills v. Foremost Ins. Co.,* 511 F.3d 1300, 1303 (11th Cir.2008) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)). *See also Young Apartments, Inc. v. Town of Jupiter,* 529 F.3d 1027, 1037 (11th Cir. 2008). A claim is sufficient "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949, 556 U.S. 662, 173 L.Ed.2d 868 (2009).

Although the court's review is normally limited to the four-corners of the complaint, there is authority allowing a court to consider material central to the claims of the complaint and as to which there is no question as to authenticity. *Maxcess, Inc. v. Lucent Techs., Inc.,* 433 F.3d 1337, 1340 n. 3 (11th Cir.2005). Shaw does not dispute the propriety of this Court's consideration of the record in the underlying litigation below and on appeal.

To state a claim for legal malpractice, a plaintiff must prove three elements: (1) the existence of an attorney client relationship; (2) the attorney's neglect of reasonable duty; and (3) that the attorney's negligence resulted in and was the proximate cause of loss to the client. *Larson & Larson PA, v. TSE Industries, Inc.,* 22 So. 3d 36, 39 (Fla. 2009); *Tarleton v. Arnstein Lehr,* 719 So. 2d 325 (Fla. 4th DCA 1998). Here, the Amended Complaint more than sufficiently alleges these elements as well as the relevant factual support to place these "claims across the

line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. at 1974.   In any event, even were this Court to be inclined to grant the motion to dismiss, the  dismissal should be without prejudice as a  plaintiff is generally given at least one opportunity to amend by leave of court.  *See e.g. Bryant v. Dupree*, 252 F.3d 1161, 1163-64 (11th Cir. 2001).

### III.   RELEVANT FACTS

In the action below, Shaw retained Broad and Cassel to enforce the '305 Patent.  *See* Complaint at ¶¶ 17-20.  In advance of litigation, Broad and Cassel sent cease and desist letters to various flower importers (the "Importers") whom Shaw believed to be infringing the '305 Patent. *Id.* at ¶ 22.  The Importers subsequently sued for a declaratory judgment of non-infringement and invalidity to which Broad and Cassel responded with a patent infringement counterclaim.  *Id.* at ¶ 25.

At his deposition in the underlying action, Shaw gave erroneous testimony as to the date when he first began to commercially exploit his invention. *Id.* at ¶¶ 27-31.  He testified that he had begun commercial sale of roses grown with the patented method in 1994.  *Id.*   This testimony contradicted Shaw's previous interrogatory responses in which he identified August/September 1995 as the date   of his first sale.  *Id.* at ¶ 32.   In explaining his change in dates, Mr. Shaw referenced various entries in his passport from 1994. *Id.* at ¶ 31.  That passport, however, also reflected entries for 1995*, id.,* a critical fact that Defendants failed to discover until it was too late. *Id.* at ¶ 34.

As experienced patent litigation counsel would have recognized, Shaw's deposition testimony, if true, was fatal to the validity of the '305 patent.  *Id.* at ¶¶ 34, 35.  If, in fact, Shaw had begun sales in 1994, more than a year before his patent application was filed, and his invention was then ready for patenting, the Defendants had a duty to advise Shaw that his patent

6

was invalid and his case meritless.  *Id.*  If, on the other hand, the Defendants concluded that Shaw's testimony was incorrect and could thus continue the case, then, under Rule 11, they had a duty to ensure that Shaw's mistakes were timely corrected. *Id.*  What they did, however, was nothing notwithstanding their client's "bombshell" testimony.  *Id.* at ¶ 36.  Indeed, the Defendants appear to have wholly failed to appreciate that Shaw's deposition testimony, if correct, compromised Shaw's case.[2] *Id.* at ¶¶ 32-37.

What  most reveals  Defendants' ignorance and lack of diligence are the steps they took in response to the Importers' Rule 11 motion which raised the "on-sale" bar front and center.  *Id.* at ¶¶ 39, 41 and 45.   Upon receipt of that motion, Defendants conferred with Mr. Shaw over the "on sale" issue who researched the issue in depth and confirmed that his testimony was in error. *Id.*   In conjunction with Mr. Shaw, they prepared an errata sheet correcting the deposition testimony, and later prepared a declaration for Shaw to sign.  *Id.*   They contacted and interviewed Govind Muthiah, a witness who had worked with Mr. Shaw to perfect the technique of growing the roses and who had knowledge as to when Shaw began selling roses grown with his method and when his invention was ready for patenting.  Even later, they contacted other witnesses, Pedro Salzedo and David Sperber, a Harvard educated lawyer, who both had personal knowledge as to when Shaw began selling roses grown with his invention. .  *Id.* Each of these witnesses confirmed what Mr. Shaw had told the Defendants  – that his deposition testimony was mistaken and that his sales originally began in 1995 as set forth previously in Shaw's prior answers to interrogatories.

Clearly, the Defendants understood they had a duty to inform Shaw of the § 102(b) issue

---

[2] The alternative would be even more damning.  If the Defendants in fact recognized the fatal flaw in Shaw's testimony and yet did nothing then their failure to act would suggest a degree of willfulness.

and assist him to truthfully correct the record.  Unfortunately, they did not appreciate the issue until receiving their opponents Rule 11 motion which occurred well after the thirty days that Shaw had to submit an *errata* sheet.     *See* Ex. "A," December 10, 2008 Order Granting Plaintiff's Motion for Summary Judgment at p. 11 ("Even if material changes that contradict the original substantive testimony are permissible, they must be made within the 30-days mandated by Rule 30(e).").     And moreover, because of that initial failure, the Court concluded that it could not consider the corroborating declarations either.  *Id.* at p. 13; Ex. "B," April 27, 2009 Order Denying Defendants' Motion for Reconsideration at pp. 4-5.   Thus, because the court would not allow the *errata* sheet which it deemed untimely, the court concluded that it had to ignore, for multiple reasons, the ample corroborating testimony.

## IV.    **LEGAL ARGUMENT**

The Defendants contend that they owed no duty to "coach" Shaw; however, as detailed above, Shaw makes no such allegation. Rather, Shaw contends that Defendants failed to provide adequate representation by properly investigating his case and preparing him for deposition, understand a dispositive legal issue, timely communicate that issue to him, and to act with diligence and dispatch in correcting the record.  More specifically, the Defendants breached at least four separate legal duties they owed to Shaw:

### a.  **Duty to be Informed**

In the first instance, the Defendants owed Shaw a duty to provide competent representation.  Fl. Rule of Prof. Conduct 4-1.1 provides:[3]

---

[3] Under Florida law, although violation of a duty of professional conduct does not constitute negligence *per se*, violations may nevertheless be considered as evidence of negligence.  *Oberon Investments, N.V. v. Angel, Cohen and Rogovin,* 492 So.2d 1113, 1114 n. 2 (Fla. 3d DCA 1986), quashed on other grounds, 512 So.2d 192 (Fla. 1987)

CASE NO.: 1:11-cv-23689-Altonaga/Simonton

> A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

Competent representation "includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners." *See* Fl. R. Prof. Conduct 4-1.1, Comments.    An attorney's reasonable duties require an attorney to have the knowledge and skill necessary to confront the circumstances of each case. *See Jones v. Law Firm of Hill and Ponton,* 141 F.Supp.2d 1349, 1357 (M.D. Fla. 2001); *State v. Meyers,* 430 So. 2d 440, 443 (Fla. 1983), *overruled on other grounds sub nom. State v. District Court of Appeal, First District,* 569 So.2d 439 (Fla.1990), ("Lack of knowledge of or compliance with prescribed rules of practice and procedure is a dereliction of professional responsibility not easily excused, which may subject the negligent attorney to liability for damages to the client as well as disciplinary proceedings before The Florida Bar."); *Resolution Trust v. Holland & Knight,* 832 F. Supp. 1528, 1530 (S.D. Fla. 1993) ("An attorney's reasonable duties include the duty of care, which requires an attorney to have the knowledge and skill necessary to confront the circumstances of each case.").

Here, of course, relevant knowledge would include knowledge of such standard defenses as the §102(b) "on-sale" bar. The Defendants' failure to take any actions whatsoever once Shaw gave his testimony shows that, contrary to this duty, they did not possess the requisite legal knowledge for the representation.  This failure to understand the significance of Shaw's testimony, or the simple failure to address the issues raised by it, led directly to the loss of the '305 patent which had they understood it, they had the opportunity to correct.

The plain language of Fed.R.Civ.P. 30(e), governing the submission of *errata* sheets, provides for substantive corrections to deposition testimony:

CASE NO.: 1:11-cv-23689-Altonaga/Simonton

On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A)     to review the transcript or recording; and
(B)     if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

This right is widely recognized in the Circuit.  *See Cultivos Yadran S.A. v. Rodriguez,* 258 F.R.D. 530, 533 (S.D. Fla. 2009) (allowing substantive changes based on plain language of Rule 30(e) and noting that a broad interpretation of Rule 30(e)  "furthers the purpose of the discovery process-to allow the parties to elicit the true facts of a case before trial."); *Liberty/Sanibel II, Ltd. v. Gettys Group, Inc.,* 2007 WL 1109274, *1-2 (M.D. Fla. April 12, 2007) (allowing substantive changes and noting that "the majority of circuits have adopted a broad interpretation of the rule" permitting substantive changes); *Purdee v. Pilot Travel Centers, LLC,* 2007 WL 3143716, *1 (S.D.Ga. Oct.23, 2007) (Noting that Rule 30(e) "expressly allows changes in form or substance"); *Unlimited Resources, Inc. v. Deployed Resources, LLC,* 2010 WL 55613, * 3 (M.D. Fla. January 5, 2010) (allowing substantive changes to deposition testimony).  *See also Lugtig v. Thomas*, 89 F.R.D. 639, 641 (N.D. Ill. 1981) (permitting 69 substantive changes to transcript).

    The Defendants ignore that Shaw had a thirty day deadline to submit an *errata* sheet and suggest that even if they were ignorant of the "on sale" bar issue, their ignorance cannot be a proximate cause of Shaw's loss because they had no duty to apprise Shaw of the thirty day deadline or the legal import of his testimony until and unless Shaw first told them that he made a mistake.[4]   The credulity of this argument is belied by Defendant's own actions after they received the Importers' Rule 11 motion. Everything they now say that they did not have to do until and unless Shaw first informed them of his error, they actually did in response to the Rule

---

[4] Moreover, there is no evidence that the Defendants every even apprised Mr. Shaw of

10

CASE NO.: 1:11-cv-23689-Altonaga/Simonton

11 motion: they informed Shaw of the legal issue; they helped Shaw prepare an *errata* sheet and supplemental declaration; they collected third party evidence and they tried to correct the record. Unfortunately, it all came too late. Suffice it to say for purposes of the current argument that Defendants never believed what they are now telling this court. Defendants never believed their actions were dependent upon what Shaw first told them. Rather, their true catalyst for action was their appreciation that Shaw's testimony created a dispositive legal issue. When they received the Importer's Rule 11 motion, Defendants went into action not because Shaw had told him that he made a mistake but because the Importers had put front and center a dispositive issue that Defendants up until that moment did not appreciate. It was their appreciation of that legal issue that motivated Defendants to act and thus for them to now suggest that their earlier ignorance or lack of appreciation of that issue was not a proximate cause of Shaw's loss rings hollow because had they done earlier what they did late, the summary judgment order that ended Shaw's case would not have issued.

Moreover, contrary to their assertion that they had no duty to ensure correct testimony was given until being apprised that a mistake occurred, Defendants clearly had a duty under Rule 11 to investigate the continued viability of their action for patent infringement once they heard Shaw testify as to the 1994 first sale date. *See* Section IV(c), below, and cases cited therein. Unaware of any issue, therefore, they failed to take any action until the Importers pointed out Shaw's fatal testimony in their Rule 11 motion at which time the Defendants immediately conducted the investigation they should have conducted earlier.

Indeed, in attempting to correct Shaw's testimony, the Defendants also ignored or did not know of other Rules and options they had available to ensure that Mr. Shaw's deposition

---

the thirty day deadline.

testimony was corrected.  First, they could have simply reconvened the deposition which, in fact,

was what all parties **had agreed** would happen.

> MR. GALE: I'm adjourning.  We are not done yet but pursuant to the stipulation
> we had with counsel we will reconvene . . . I think that's all for today.  I think we
> can adjourn for today.

*See* Ex. "C," Shaw Trans., 190:9-18, excerpt.   *See* Amended Complaint ¶ 34.   Had the

Defendants done so, they would have been able to examine Mr. Shaw and he would have had the

opportunity to correct his testimony.  *See* Fed.R.Civ.P. 30(c)(1) (expressly providing for both the

examination and cross-examination of witnesses in deposition). The Defendants failure to raise

this very argument was cited by the Federal Circuit in its opinion:

> Shaw also argues that the district court erred in relying on Mr. Shaw's deposition
> because it was "incomplete." Shaw complains that Plaintiffs adjourned Mr.
> Shaw's deposition while indicating that they would reconvene. They never did.
> Shaw does not dispute, however, that it failed to raise this argument before the
> district court. As a general rule, federal appellate courts will not consider issues
> that were not clearly raised in the proceedings below. *Singleton v. Wulff,* 428 U.S.
> 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Boggs v. West,* 188 F.3d 1335,
> 1337-38 (Fed.Cir.1999). ***Because Shaw failed to raise this argument below, it
> has been waived and we need not consider it here***.  [emphasis supplied].

 *Delaware Valley Floral Group, Inc. et al. v. Shaw Rose Nets, LLC. et al.,* 597 F.3d 1374, 1381

fn. 3 (11th Cir. 2010).

The Defendants, also, failed to present a compelling argument based on the language of

Rule 30(e). The Rule provides that "[o]n request by the deponent or a party before the deposition

is completed, the deponent must be allowed 30 days" within which to submit a statement making

corrections along with the reasons for the corrections.  Thus, the *errata* sheet was not even due

because the deposition had not been completed.  At any time prior to the completion of his

deposition, Mr. Shaw, therefore, had the right to request to file an *errata* sheet.  But, this

argument based on the plain language of the Rule was never presented by the Defendants.

CASE NO.: 1:11-cv-23689-Altonaga/Simonton

Rather, they simply acceded to the Importers' position that the thirty day time limit applied but argued that it should nevertheless be excused.[5]

Moreover, the Defendants failed to raise a second issue relevant to the "on-sale" bar. The "on-sale" bar has a "ready for patenting" requirement. See, *Pfaff v. Wells Elecs. Inc.*, 525 U.S. 55, 67 (1998). Sales made before an invention is ready for patenting do not trigger the "on sale" bar. This argument was clearly available to Shaw because Govind Muthiah testified by affidavit that he had been hired in 1995 to refine Shaw's method and to prepare the drawings and technical information Shaw needed for his patent application. Thus, even if Shaw was bound by his testimony that he had begun to sell in 1994, there arguably was still no "on sale" bar because his invention was not ready for patenting until 1995 but the Defendants failed to timely raise it.

> Notably, Mr. Shaw does not dispute that the invention was ready for patenting; he focuses only on the timing of the sales.  The second prong of *Pfaff* is satisfied because Mr. Shaw does not dispute the method of placing porous plastic netting on roses was completed at the time he made the sales.  The only issue is when the sales took place.

December 10, 2008 Order Granting Motion for Summary Judgment at p. 7.  This waiver was affirmed on appeal.  *See also* Delaware *Valley Floral Group, Inc. et al. v. Shaw Rose Nets, LLC. et al.,* 597 F.3d at p. 1384 ("Shaw further failed to dispute that the invention was 'ready for patenting.'").[6]

---

[5] Indeed, although not part of the record, Mr. Shaw's deposition transcript includes no admonition to the deponent of his right to read the transcript, presumably because everyone agreed that the deposition was not concluded.

[6] In yet another omission, the Defendants failed to cite, until the motion for reconsideration, the case of *Gemmy Industries Corp. v. Chrisha Creations, Ltd.*, 452 F.3d 1353 (Fed. Cir. 2006), a case where the Federal Circuit allowed additional evidence that previous sales had been made before the invention was ready for patenting that contradicted prior sworn testimony.  The trial court refused to consider the case for two reasons:  (1) the court noted that it had not been presented for the first time in a motion for reconsideration; and (2) the court concluded that more generalized 11th Circuit precedent precluded its consideration.  *See* Order Denying Defendants' Motion for Reconsideration At pp. 4-5.  Significantly, however, in its

CASE NO.: 1:11-cv-23689-Altonaga/Simonton

### b.  **Duty to Keep Client Informed**

Moreover, contrary to the arguments raised in their Motion, the Defendants clearly had a duty to keep Mr. Shaw informed of developments in the case so that he could assist in achieving the goals of the litigation.  Rule of Professional Conduct.4-1.4 "Communications" provides:

(a) Informing Client of Status of Representation

A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) Duty to Explain Matters to Client

A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

The Comments to the Rule make clear that "the client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued . . .".  *See* Fl. R. Prof. Conduct 4-1.4, Comments.

Thus, Mr. Shaw had the right to be promptly informed of developments in the case so that he could intelligently participate in the conduct of the case.  Indeed, after the Defendants learned of the on-sale bar from the Importers' Rule 11 motion and communicated same to Mr. Shaw, Mr. Shaw informed the Defendants of his error and, moreover, why it had been made. Had the Defendants earlier communicated the same information to Shaw, timely corrections could have been made and other appropriate action taken. Moreover, especially given the potentially dispositive nature of Shaw's erroneous testimony, the Defendants had the further duty to inform Mr. Shaw of the potential for sanctions if the litigation were to continue.  *Visoly v.*

---

opinion, the Federal Circuit ***did consider*** *Gemmy* but held that the Defendants had failed to build an adequate record to support the argument, again an issue that was in their power to correct. *See Delaware Valley Floral Group, Inc., et al. v. Shaw Rose Nets, LLC, et al.*, 597 F.3d at p. 1382 ("In the instant case, there is no corroborating admissible evidence supplied as there was in *Gemmy*.").  See Amended Complaint, ¶ 53(1).

*Security Pacific Credit Corp.*, 768 So. 2d 482, 492 (Fla. 3rd DCA 2000) (noting attorney's duty to advise client of potential for sanctions for pursuing frivolous action).

### c.  <u>Duty to Investigate</u>

The Defendants also breached their duty to competently investigate the facts of their action. See, *Bill Branch Chevrolet, Inc. v. Philip L. Burnett, P.A.,* 555 So. 2d 455 (Fla. 2nd DCA 1990) (allegations of failure to adequately conduct investigation were sufficient to state a claim for legal malpractice).  Indeed, tellingly, once the Defendants finally recognized the significance of Mr. Shaw's testimony, the Defendants immediately began conducting the investigation that they should have done earlier.

Moreover, the Defendants had an ethical to duty to use due care to prepare Mr. Shaw for his deposition.  *See e.g. In re Stratosphere Corp. Securities Litigation,* 182 F.R.D. 614, 621 (D.Nev. 1998) (Noting "attorney's ethical duty to prepare a witness.");  *Attin v. Tittle & Tittle,* 730 So. 2d 376, 378 (Fla. 3rd DCA 1999) (Where an attorney undertakes a duty, failure to exercise due care will render the attorney liable in negligence).  In this case, Mr. Shaw clearly had a right to expect his attorneys to explain legal issues likely to arise during deposition and investigate and confirm critical facts related thereto.  Had the Defendants fulfilled their duty to competently prepare Mr. Shaw, they would have consulted independent witnesses and other documentary evidence well in advance of the deposition so that Mr. Shaw would have had that benefit going in.  Instead, as set forth in the Amended Complaint, all they did was sit Mr. Shaw with the file and left him to his own devices.  *See* Amended Complaint, ¶¶ 29-31.

Indeed, any suggestion that Defendants had no duty to investigate the "on sale" issue either before or after Shaw's deposition is preposterous since it was a prominent issue from the start.  The underlying complaint for declaratory relief expressly alleged that the '305 patent was

CASE NO.: 1:11-cv-23689-Altonaga/Simonton

invalid under the "on-sale" bar.  The Defendants denied that allegation and filed a patent infringement counterclaim which was answered with an "on sale" bar affirmative defense. During discovery, the Defendants assisted Mr. Shaw in preparing interrogatory responses which set forth a first-sale date of 1995 in response to an "on sale" bar interrogatory.   Then, at deposition, Mr. Shaw gave testimony that contradicted the earlier sales date which directly implicated the legitimacy of his patent infringement counterclaim, his defense to the declaratory judgment action and his prior interrogatory answer.

Clearly, the Defendants should have prepared Shaw for questions on the "on sale" bar issue.  They did not.  Secondarily, immediately after Shaw gave his fatal testimony, Defendants had to investigate and ensure that the claims, defenses and interrogatory answers they had previously raised were in fact still viable. Under Rule 11, an attorney is obligated to objectively review his client's information to determine if it factually supports the client's claim and if such review reveals important discrepancies, inconsistencies, or gaps in the information provided, the attorney must investigate further.[7]  *See, e.g., Medical Emergency Serv. Assoc., S.C. v. Foulke*, 844 F.2d 391, 400-401 (7th Cir.1988); *Coburn Optical Industries, Inc. v. Cilco, Inc.*, 610 F.Supp. 656, 659 (M.D.N.C.1985); *Wold v. Minerals Engineering Co.*, 575 F.Supp. 166, 167-168 (D.Colo. 1983).   Indeed, where investigation reveals that a claim is, in fact, untenable, an attorney has a duty under Rule 11 to dismiss the case.  *Van Berkel v. Fox Farming and Road Machinery*, 581 F. Supp. 1248, 1251 (D.C. Minn. 1984); *Vega v. F.A.A.*, 621 F. Supp. 1177, 1179 (D.D. N.Y. 1985).  Moreover, not only did the attorneys have a duty to investigate they had the duty to advise Shaw of the legal impact of his testimony including the possibility of sanctions for maintaining an action without factual or legal basis. *B & H Medical LLC v. ABPA Admin.,*

---

[7] See also Fl. R. Prof. Conduct 4-3.1 ("A lawyer shall not bring or defend a proceeding or

*Inc.,* 354 F.Supp.2d 746, 751 (E.D. Mich. 2005) (When discovery revealed that an action lacked factual support "[it] was unquestionably the duty of the Plaintiff's counsel to ascertain and advise his client about the law governing antitrust claims advanced in this case, *see* Fed.R.Civ.P. 11(b)(2), and to determine and pursue in discovery the factual support that would be necessary to justify the continued pursuit of these claims."); *Visoly v. Security Pacific Credit Corp.*, 768 So. 2d at p. 492 (Fla. 3rd DCA 2000) (noting duty to advise client of potential sanctions).

Moreover, not only did the attorneys have a duty to investigate, they had the duty to advise Shaw of the legal impact of his testimony including the possibility of sanctions for maintaining an action without factual or legal basis. *B & H Medical LLC v. ABPA Admin., Inc.,* 354 F.Supp.2d 746, 751 (E.D. Mich. 2005) (When discovery revealed that an action lacked factual support "[it] was unquestionably the duty of the Plaintiff's counsel to ascertain and advise his client about the law governing antitrust claims advanced in this case, *see* Fed.R.Civ.P. 11(b)(2), and to determine and pursue in discovery the factual support that would be necessary to justify the continued pursuit of these claims."); *Visoly v. Security Pacific Credit Corp.*, 768 So. 2d at p. 492 (Fla. 3rd DCA 2000).

This was not, therefore, an ordinary piece of information but rather one that was absolutely critical to the maintenance of the lawsuit.   If Shaw's testimony was true, the Defendants had the duty to inform Shaw that his counterclaim was meritless, that his prior denials to the §102(b) allegations in the Declaratory Judgment action were no longer accurate and dismiss the suit if the information were true.   If Shaw's testimony was erroneous, Defendants had the duty to provide competent representation and undertake timely efforts to correct the record.

---

assert or controvert an issue therein, unless there is a basis in law or in fact for doing so. . .").

CASE NO.: 1:11-cv-23689-Altonaga/Simonton

What Defendants could not do is what they now claim they had the right to due – sit like ostriches, heads in sand.  They owed Shaw a duty to recognize the legal issue, investigate the facts, and take appropriate action.  In other words, once the testimony was uttered, they had the immediate duty to do exactly those things that they in fact did after receiving the Importers' Rule 11 motion.

### d.  Duty of Diligence

The Defendants furthermore owed Shaw a duty to act with reasonable diligence.  *See e.g.* Fl. R. Prof. Conduct 4-1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client.").   As the comment notes "[a] client's interests often can be adversely affected by the passage of time or the change of conditions; in extreme instances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed."  Fl. R. Prof. Conduct 4-1.3, Comments.   A client, therefore has the right to expect that an attorney will be diligent and ensure that deadlines are not missed and actions that need to be taken are taken timely.  *Galloway v. Law Offices of Merkle, Bright and Sullivan,  PA,* 596 So. 2d 1205, 1207 (Fl. 4th DCA 1992) (Noting that mere allegations of failure to file complaint within deadline imposed by statute of limitations constituted negligence to overcome affidavit of expert stating that attorney met standard of care.); *Fed. Trade Comm'n v. Hope Now Modifications, LLC,* 2010 WL 3001985, at *5 (D.N.J. July 27, 2010) (noting that an attorney's failure to meet a deadline constitutes sufficiently clear malpractice that no expert testimony is required). *Cameron v. Washington Metropolitan Area Transit Authority,* 649 A.2d 291, 294 (D.D.C 1994) ("…counsel has a duty to pay attention to filing deadlines and not let one go by in any pending case without doing whatever needs to be done.").

Here, the Defendants' failure to timely recognize the impact of the Mr. Shaw's mistaken

18

testimony led to the very concern raised in the Comment - his "legal position" was "destroyed." By missing the deadline to file an *errata* sheet, Mr. Shaw was essentially stuck with his incorrect testimony. The Defendants dismiss this argument by pointing to a gratuitous comment made by the trial court in its December 10, 2008 Order - "I see no reason why Mr. Shaw should be allowed to change his deposition testimony with an untimely *errata* sheet, even if I had discretion to excuse compliance with the 30-day period."   Judge Jordan's comment should be ignored for several reasons. First, the comment was of no legal significance as the court had already ruled that it had no discretion to forgive compliance with the thirty day deadline. *See* December 10, 2008 Order Granting Motion for Summary Judgment at p. 11. ("Because there is ample case law requiring strict compliance with the 30-day limitations period . . . Mr. Shaw's *errata* sheet cannot stand."). Second, as noted above, the law clearly permits a deponent to make substantive changes to his testimony.  Third, contextually, one has to wonder if Judge Jordan would have quipped as he did if he had, at the time of his comment, the Salzedo and Sperber affidavits which fully corroborated Shaw's change in testimony. As it happened, Shaw's *errata* sheet was given to Judge Jordan without any admissible corroborative evidence and thus all that Judge Jordan had was Shaw's bold change of unequivocal case dispositive testimony. The Sperber and Salzedo affidavits legitimized what otherwise appeared to be an incredulous change of position.[8]  Indeed, the veritable coup d'grace on this issue is the very order the trial court entered denying the Importers' request for Rule 11 sanctions, entered coincidentally the very

---

[8] But the Defendants acted too late for the Court to consider this non-hearsay testimony. See April 27, 2009 Order Denying Defendants' Motion for Reconsideration at pp. 2-3; *Delaware Valley Floral Group, Inc. v. Shaw Rose Nets, LLC*, 597 F.3d at p. 1380, fn. 1 ("It is undisputed that Sperbert's and Salzedo's affidavits were not offered into evidence until Shaw submitted its motion for reconsideration.  To the extent that Shaw offers this testimony to bolster its argument that summary judgment was inappropriate, we will not consider it here.  This evidence could not have been considered by the district court at that time.").

same day that the Defendants presented the court  with the Sperber and Salzedo declarations. *See* Ex. "D," December 19, 2008 Order Denying Plaintiff's  Motion for Sanctions.  There, recognizing the existence of a factual basis for Shaw's position, the court emphasized that its decision to reject Shaw's *errata* sheet was procedural not substantive:

> Although I found that the *errata* sheet should not be allowed to change Mr. Shaw's substantive deposition testimony because it was untimely, and that Mr. Muthiah's declaration was insufficient to preclude summary judgment, I do not find that the defendant's position was objectively frivolous or that the defendants failed to make a reasonable inquiry into the facts on which their claims were predicated.  I made a legal determination that the *errata* sheet and declaration cannot be accepted, but that does not mean that the defendants and their counsel did not have a good faith belief in their claims.

*Id.* at p. 2-3.   In short, Judge Jordan invalidated Shaw's patent not because he substantively discredited Shaw's *errata* sheet but because it was filed late. The late filing of Shaw's *errata* sheet falls squarely on the Defendants as they clearly knew, based on their reaction to the Importer's Rule 11 motion,  what needed to be done to rebut the Importers'  "on sale" issue. And regardless of why they did not act earlier, it is indisputable that had Defendants acted when they should have, Judge Jordan would not and could not have ruled as he did.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny the Defendants' Motion and require them to answer the allegations in the Amended Complaint.

CASE NO.: 1:11-cv-23689-Altonaga/Simonton

Respectfully submitted,

/s/ Jeffrey D. Feldman
Jeffrey D. Feldman, Esq.                    .
Fla. Bar No. 330302
jfeldman@feldmangale.com
FELDMAN GALE, P.A.
Counsel for Plaintiffs
One Biscayne Tower  Suite 3000
Two So. Biscayne Boulevard
Miami, Florida  33130
Telephone:  (305) 358-5001
Facsimile:  (305) 359-3309

## CERTIFICATE OF SERVICE

I hereby certify that on this [2nd] day of December, 2011, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document

is being served this day on all counsel of record or other persons authorized to receive Notice of

Electronic Filing generated by CM/ECF.

Isaac Mitrani, Esq.
Fla Bar No. 348538
imitrani@mitrani.com
MITRANI RYNOR ADAMSKY  & TOLAND, P.A.
Counsel for Defendants
301 Arthur Godfrey Road
Penthouse
Miami Beach, Florida  33140
Telephone:  (305) 358-0050
Facsimile:  (305) 358-0550

___/s/  Jeffrey D. Feldman_____
Jeffrey D. Feldman

21