UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-23689-CIV-ALTONAGA/Simonton

**KENNETH P. SHAW**, *et al.*,

    Plaintiffs,
vs.

**BROAD AND CASSEL**, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court upon the Motion to Dismiss Amended Complaint with Prejudice . . . ("Motion") [ECF No. 9] filed by Defendants, Broad and Cassel, Broad and Cassel, P.A. (collectively "Broad and Cassel"), Mark F. Raymond, Mark F. Raymond, P.A. ("collectively Raymond"), Rhett Traband, Rhett Traband, P.A. (collectively "Traband"), and Juancarlos Sanchez ("Sanchez"), on November 7, 2011. Defendants seek to dismiss Plaintiffs, Kenneth P. Shaw ("Shaw") and Shaw Rose Nets, LLC's (Shaw Rose Nets['s]") Amended Complaint [ECF No. 1-2] under Federal Rule of Civil Procedure 12(b)(6). The Court has carefully considered the parties' written submissions and the applicable law.

## I. BACKGROUND[1]

In 1995, Shaw, a grower and exporter/importer of commercial grade roses, developed a method to substantially enhance the growth and size of rose heads by using nylon mesh nets. (*See* Compl. ¶¶ 11–12). To protect his invention, Shaw filed a patent application with the United States Patent and Trademark Office ("USPTO") on January 15, 1996. (*See id.* ¶ 13). On June 16, 1998, the USPTO awarded Shaw U.S. Patent No. 5,765,305 (the "patent") titled, "Method of

---

[1] The allegations of Plaintiffs' Amended Complaint are taken as true.

Case No. 11-23689-CIV-ALTONAGA/Simonton

Increasing the Size of a Rose Head During Growth." (*Id.*).

At all times relevant, Broad and Cassel held itself out to be a full-service law firm with substantial experience and expertise in intellectual property law. (*See id.* ¶ 18). Mark F. Raymond is a lawyer who practices law at Broad and Cassel through Mark F. Raymond, P.A.; Rhett Traband is a lawyer who practices law at Broad and Cassel through Rhett Traband, P.A.; Sanchez is a lawyer who was an associate at Broad and Cassel. (*See id.* ¶¶ 5–7).

In 2006, Shaw contacted Broad and Cassel to discuss enforcement of the patent after Shaw notified a number of U.S. importers of (1) the patent, and (2) that they infringed upon it when importing roses grown with the method described and claimed in the patent. (*See id.* ¶¶ 14, 16–17). Raymond advised Shaw that he practiced intellectual property law and was qualified and experienced in patent infringement litigation. (*See id.* ¶¶ 5, 19). In reliance on Defendants' representations of their experience and expertise, Shaw retained Defendants as counsel in connection with the enforcement of the patent. (*See id.* ¶ 20). Shaw Rose Nets also retained Broad and Cassel as counsel in connection with its interests in the patent. (*See id.* ¶ 21).

Broad and Cassel sent cease and desist letters to various alleged infringers who imported significant quantities of infringing roses into the United States. (*See id.* ¶ 22). These letters demanded that the importers cease their infringing activities or negotiate a license. (*See id.*). On January 25, 2007, the importers sought a declaratory judgment in federal court that the patent was invalid and unenforceable. (*See* December 10, 2008 Order Granting Plaintiffs' Motion for Summary Judgment, *in Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, Case No. 07-20199-CIV-Jordan, Ex. E, at 1 ("2008 Summary Judgment Order") [ECF No. 1-6]). Broad and Cassel then filed counterclaims against the importers for patent infringement on behalf of Shaw

2

and Shaw Rose Nets.  (*See* Compl. ¶ 25).

During the *Delaware Valley* litigation, the importers deposed Shaw.  (*See id.* ¶ 27).  Prior to the deposition, Defendants did not review with Shaw key dates, events, and issues.  (*See id.* ¶ 30).  Rather than meeting with Shaw, the Defendants gave Shaw their file and asked him to review it alone in a firm conference room.  (*See id.*).  At his deposition, Shaw was unaware of the significance of the first date he sold roses grown with his patented method, and mistakenly testified that he had begun exporting to the United States roses grown with his patented method in 1994.  (*See id.* ¶¶ 27, 31).  Indeed, Shaw first conceived and exploited his invention in 1995, not 1994.  (*See id.* ¶ 29).  Shaw traveled many times to South America in both 1994 and 1995, and incorrectly relied on a 1994 passport entry in giving his testimony.  (*See id.* ¶ 31).  Shaw alleges he gave this mistaken testimony because the Defendants did not prepare him for deposition.  (*See id.* ¶ 29).  Further, Traband and Sanchez, the lawyers who represented Shaw at the deposition, failed to make any attempt to correct Shaw's testimony on cross-examination despite the fact that Shaw, in interrogatory answers given prior to his deposition, had identified 1995, not 1994, as the year in which he began to exploit his invention.  (*See id.* ¶ 32).

Raymond, the senior lawyer on Shaw's file, did not represent Shaw at the deposition.  (*See id.*).  Rather, Shaw was represented by Traband, a lawyer inexperienced in patent law, and Sanchez, a junior lawyer also unqualified in patent law.  (*See id.*).  Traband had also left the deposition mid-course.  (*See id.*).

Raymond, Traband, and Sanchez did not take any action after Shaw's deposition testimony had been transcribed and had become available for review.  (*See id.* ¶ 33).  None of these attorneys timely appreciated the significance of Shaw's testimony in light of 35 U.S.C. §

3

Case No. 11-23689-CIV-ALTONAGA/Simonton

102(b),[2] which requires an inventor to file a patent application within one year of beginning to commercially exploit his invention to be valid. (*See id.* ¶¶ 28, 33). Had Defendants understood the significance of Shaw's error, they could have (1) asked Shaw questions during the deposition to correct his testimony, (2) "notice[d] the continuation" of Shaw's deposition to allow Shaw the opportunity to correct his testimony, or (3) submit[ted] an errata sheet seeking to correct his testimony within thirty days from the date the deposition transcript became available. (*See id.* ¶ 34). Conversely, had Defendants understood the significance of Shaw's testimony and believed the testimony to be correct, they should have ceased prosecuting Shaw's counterclaims because they would have understood that there was no longer a good faith basis for maintaining suit as the patent was unenforceable and invalid. (*See id.* ¶ 35). Yet, because Defendants were ignorant of the mistake and the import of Shaw's testimony, Defendants did nothing. (*See id.* ¶ 36).

After the thirty-day window for submitting an errata sheet had passed, the importers served Shaw a motion for sanctions under Federal Rule of Civil Procedure 11, requesting that Shaw dismiss his case with prejudice in view of his testimony. (*See id.* ¶ 37). After the Defendants informed the importers that Shaw's testimony was merely a mistake and that they had no intention of taking a dismissal, the importers filed a motion for summary judgment, which asked that the district court declare the patent invalid pursuant to 35 U.S.C. § 102(b) based on Shaw's deposition testimony. (*See id.* ¶¶ 37–38).

Notably, Shaw's deposition had merely been adjourned, not concluded. (*See id.* ¶ 39). Thus, even after the importers filed their motion for summary judgment, Defendants could still

---

[2] Title 35, section 102 provides: "A person shall be entitled to a patent unless . . . (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . . ." 35 U.S.C. § 102(b).

Case No. 11-23689-CIV-ALTONAGA/Simonton

have noticed the continuation of the deposition, cross-examined Shaw during the continuation, and elicited testimony correcting his prior mistake. (*See id.*). Instead, Defendants submitted an untimely errata sheet, attempting to correct Shaw's testimony, in order to oppose the importers' motion for summary judgment. (*See id.*).

Defendants also submitted a declaration from Govind Muthiah ("Muthiah"), an employee who began working for Shaw in 1995, that stated Shaw began exporting roses grown by the patented method in 1995. (*See id.* ¶ 41). Defendants knew of two other prior employees of Shaw, David A. Sperber ("Sperber") and Pedro Salzedo ("Salzedo"), who had worked for Shaw in 1994 and who had personal knowledge that Shaw's conception and exploitation of his invention first occurred in 1995, not 1994. (*See id.* ¶ 45). However, Defendants did not submit sworn declarations from these employees with Shaw's opposition brief to the importers' motion for summary judgment. (*See id.*). Defendants advised Shaw that Sperber's and Salzedo's declarations were not needed to defend against the motion. (*See id.*).

Had the Defendants timely corrected Shaw's erroneous testimony regarding the date he first sold roses grown using his patented method, Shaw would have been able to demonstrate the existence of a disputed issue of material fact, thus avoiding entry of summary judgment. (*See id.* ¶ 40). Instead, the district court judge held that he could not consider (1) the errata sheet because it was untimely, nor (2) Muthiah's declaration because as a matter of law, "'[w]hen the nonmovant has testified to events, [the Court does] not (as urged by Plaintiffs' counsel) pick and choose bits from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) and then string together those portions of the record to form the story that we deem most helpful to the nonmovant.'" (2008 Summary Judgment Order

Case No. 11-23689-CIV-ALTONAGA/Simonton

13 (citing and quoting *Evans v. Stephens*, 470 F.3d 1272, 1278 (11th Cir. 2005) (internal citations omitted)); *see* Compl. ¶ 43). The district court added that Muthiah's declaration also could not be considered because Muthiah did not have personal knowledge of events in 1994 as he did not begin working for Shaw until 1995. (*See* Compl. ¶ 43). Accordingly, the district court granted summary judgment to the importers invalidating the patent based on Shaw's deposition testimony, even if it was incorrect. (*See id.* ¶ 44).

Defendants then moved for the district court to reconsider its ruling, and submitted declarations from Sperber and Salzedo—attesting to their personal knowledge that Shaw first conceived and exploited his invention in 1994—in support. (*See id.* ¶ 45). The district court, in denying the motion, refused to consider these declarations. (*See id.* ¶ 46). The court opined that had the declarations been relevant to the motion for summary judgment, they should have been filed with the court before it rendered its decision. (*See id.* ¶ 46). On March 10, 2010, the United States Court of Appeals for the Federal Circuit affirmed the district court's rulings and the invalidation of the patent. (*See id.* ¶ 48).

On multiple occasions, Defendants, who held themselves out to be experts and experienced litigators, could have taken proper steps to ensure that the district court considered evidence demonstrating that Shaw's deposition testimony was error. (*See id.* ¶¶ 49–50). Because Defendants failed to do so, Shaw and Shaw Rose Nets lost all rights to enforce the patent, and therefore could not pursue patent infringement counterclaims against the importers, valued by Raymond at more than $25 million. (*See id.* ¶ 50). Shaw and Shaw Rose Nets would have prevailed on these counterclaims but for Defendants' negligence. (*See id.*). The Amended Complaint contains one count alleging legal malpractice against all Defendants.

Case No. 11-23689-CIV-ALTONAGA/Simonton

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*  (quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556).  To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

## III.  ANALYSIS

Under Florida law, the plaintiff in a legal malpractice suit must prove three elements: "(1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) that the attorney's negligence resulted in and was the proximate cause of loss to the client." *Larson & Larson, P.A. v. TSE Indus., Inc.*, 22 So. 3d 36, 39 (Fla. 2009) (quoting *Law Office of David J. Stern, P.A. v. Sec. Nat'l Servicing Corp.*, 969 So. 2d 962, 966 (Fla. 2007)).  The parties do not

Case No. 11-23689-CIV-ALTONAGA/Simonton

contest that Shaw has sufficiently alleged Defendants' employment, thereby satisfying the first element. The Court therefore only addresses the second and third elements.

### A. Duty of Care[3]

An attorney's reasonable duties include the duty of care, "which requires an attorney to have the knowledge and skill necessary to confront the circumstances of each case." *Resolution Trust v. Holland & Knight*, 832 F. Supp. 1528, 1530 (S.D. Fla. 1993) (citations omitted); *see also Jones v. Law Firm of Hill & Ponton*, 141 F. Supp. 2d 1349, 1357 (M.D. Fla. 2001) (citing *Bill Branch Chevrolet, Inc. v. Philip L. Burnett, P.A.*, 555 So. 2d 455, 455 (Fla. 2d DCA 1990); *State v. Meyers*, 430 So. 2d 440, 443 (Fla. 1983), *overruled on other grounds sub nom. State v. Dist. Court of Appeal, First Dist.*, 569 So. 2d 439 (Fla. 1990)).

#### 1. Defendants' Neglect of Their Duty

Shaw asserts that Defendants did not have the knowledge and skill necessary to represent him in a patent case, despite their representations to the contrary, as evidenced by Defendants' failure to timely act subsequent to his deposition. Had Defendants known that Shaw's deposition could invalidate his patent pursuant to 35 U.S.C. § 102(b), which requires that a patent application be filed within one year of the invention's commercial exploitation, they should have either (1) timely sought to correct Shaw's incorrect deposition testimony, or (2) investigated whether Shaw's patent infringement counterclaims remained viable, without any prompting by Shaw of his erroneous testimony. (*See* Compl. ¶¶ 34–36). Defendants did neither. Moreover, even if Defendants failed to act because they understood that Shaw's patent would not be

---

[3] In Shaw's opposition, he suggests that Defendants owed him, among other duties, a "duty to be informed," or "duty to provide competent representation." (Opp'n Br. 8–9). The Court's analysis of the "duty of care" encompasses these duties.

8

Case No. 11-23689-CIV-ALTONAGA/Simonton

invalidated by section 102(b) despite his testimony — because, for example, Shaw's method was not ready for patenting until 1995 despite sales occurring in 1994 — no such legal argument was offered for the district court judge to consider either in opposition to the motion for summary judgment or in support of the motion for reconsideration. (*See* Opp'n Br. 13). As alleged by Shaw, this demonstrates that Defendants, within thirty days of being notified that Shaw's deposition transcript was available, were unaware of the import of section 102(b) and Shaw's testimony. (*See* Compl. ¶¶ 34–36).

Defendants assert that they had no duty to "coach [Shaw's] testimony in advance," nor a duty to take any corrective action after Shaw's deposition until Shaw informed them of his error. (*See* Mot. 9). Notwithstanding these contentions, Defendants offer no explanation of why, given Shaw's testimony, they failed to (1) notice his error and its significance; or act by (2) investigating the viability of Shaw's counterclaims; and (3) advising Shaw that his counterclaims may not be viable and the reasons therefore. Because an attorney has a duty to advise the client as to all legal problems of which the attorney becomes aware, *McCarty v. Browning*, 797 So. 2d 30, 31 (Fla. 3d DCA 2001), Defendants' inaction, as alleged by Shaw, serves to demonstrate a lack of the necessary knowledge and skill as required by the duty of care.

Defendants also maintain that whether Shaw was "mistaken" during his deposition was a "factual issue . . . litigated by Shaw against Delaware Valley in the underlying case, and determined against him." (Reply Br. 5). However, Defendants cite to no part of the record demonstrating that any court came to this factual conclusion, or that the factual issue was even before the court. (*See id.*). Indeed, the district court disposed of the case at the summary judgment stage, playing no fact-finding role. Moreover, the critical issue addressed in *Delaware*

Case No. 11-23689-CIV-ALTONAGA/Simonton

*Valley* was not whether Shaw was "mistaken," but whether, as a matter of law, his untimely errata sheet and witness declarations could be considered by the court when deciding the motion for summary judgment.

Defendants additionally suggest that "[e]ven had the eratta sheet been timely, the Federal Circuit simply did not find Shaw's post facto explanation for his alleged mistake plausible." (Reply Br. 4). The Court can find nothing in the opinion of the court in *Delaware Valley v. Shaw*, 597 F.3d 1374 (Fed. Cir. 2010), to support Defendants' suggestion that a timely errata sheet would have been disregarded by the district court because of its "implausibility." Rather, the appellate court upheld the district court's exclusion of Shaw's untimely errata sheet, and then separately explained why a declaration by Shaw, submitted in opposition to the motion for summary judgment, was insufficient. *Id.* at 1381–82. Defendants confuse the court's discussion regarding why an affidavit submitted in opposition to summary judgment that merely contradicts, without explanation, previously given testimony is inadmissible, with their contention that a timely errata sheet will be excluded from consideration on a motion for summary judgment if the mistake appears "implausible."

Shaw has adequately alleged that Defendants owed him a duty of care, which they neglected.

### 2. Defendants' Negligence Resulted In and Was the Proximate Cause of Loss to Shaw

As alleged by Shaw, the district court in *Delaware Valley* entered its order granting the importers' motion for summary judgment based on 35 U.S.C. § 102(b) and Shaw's incorrect testimony. Indeed, the district court specifically rejected Shaw's untimely errata sheet as well as Muthiah's declaration. Moreover, the district court denied Shaw's motion for reconsideration

10

Case No. 11-23689-CIV-ALTONAGA/Simonton

because the declarations of witnesses supporting the information on Shaw's errata sheet, submitted by Defendants, should have been presented to the court for consideration on the motion for summary judgment. Additionally, the United States Court of Appeals for the Federal Circuit affirmed the district court's decision and denied several of Shaw's arguments on appeal, declaring that he waived them by failing to raise them with the lower court. (*See* Opp'n Br. 12). Thus, Shaw's assertion that he would have prevailed in *Delaware* but for Defendants' negligence is precisely premised on the rationales of the court orders denying him the relief he sought.

Defendants urge the Court to find that the district court in *Delaware Valley* would have excluded Shaw's errata sheet, even if had been timely filed. (*See* Mot. 14–15; Reply Br. 3). However, the Summary Judgment Order indicates no such conclusion. True, the district court referred to Shaw's unequivocal deposition testimony and past deposition experience when the court concluded that it could "see no reason why Mr. Shaw should be allowed to change his deposition testimony with an *untimely* errata sheet, even if [the Court] had discretion to excuse compliance with the 30-day period." (Mot. 12) (emphasis added). This statement by the district court, however, does not support Defendants' assertion that the district court would have excluded a timely-filed errata sheet. Instead, the statement explains why the court would not exercise its discretion to admit Shaw's untimely errata sheet. Indeed, the court specifically stated:

> I need not consider whether the *Reynolds* principle — that a deponent cannot materially change his substantive deposition testimony through an errata sheet — is an obstacle for the defendants. Even if material changes that contradict the original substantive testimony are permissible, they must be made within the 30 days mandated by Rule 30(e).

(Summary Judgment Order 11). Accordingly, because the district court invalidated Shaw's

Case No. 11-23689-CIV-ALTONAGA/Simonton

patent pursuant to 35 U.S.C. § 102(b) and Shaw's uncorrected testimony, the Court cannot conclude as a matter of law that the district court would have ruled against Shaw on the motion for summary judgment had a timely errata sheet been filed, or that Shaw would not have ultimately prevailed in the lawsuit.

At this stage of the litigation, Shaw has met his burden of alleging that Defendants' negligence proximately caused his loss. Accordingly, the Court finds that Shaw has sufficiently stated a claim for legal malpractice.

### B. Other Reasonable Duties

The Court acknowledges that Shaw states that Defendants failed to uphold other specific duties both before and after his deposition that proximately caused him to lose the *Delaware Valley* case and therefore his patent. (Opp'n Br. 14–20). The failure to uphold these other duties is part and parcel of Defendants' negligence that proximately caused his loss, as alleged by Shaw: they allowed incorrect testimony to form part of the record, by either failing to properly prepare Shaw prior to the deposition or failing to correct the mistaken testimony after it was given. (*See* Compl. ¶ 50). Had accurate testimony been properly before the district court, Shaw suggests that the order granting summary judgment, where the district court based its reasoning on Shaw's testimony and the requirements of section 102(b), would not have been entered.

The Court declines to separately analyze each of these additional duties as the Court has already concluded that Shaw has sufficiently stated a claim for legal malpractice based on Defendants' neglect of their duty of care.

### IV. CONCLUSION

Based on the foregoing, it is

Case No. 11-23689-CIV-ALTONAGA/Simonton

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 9]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 20th day of December, 2011.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record